MAX GOEBEL, Appellant, *v.* SOPHIA IFFLA, Individually
and as Trustee under Will of MARTIN FICKEN, Deceased,
and Others.

(LEO SCHLESSINGER, Purchaser, Respondent.)

*Power of the Supreme Court to permit a trustee to raise money by mortgage — chapter
26 of 1884 does not confer authority to encumber the estate of remaindermen — when
prior encumbrancers or persons claiming adversely to the plaintiff are bound by the
judgment entered in an action of foreclosure—the rule is applicable where the judg-
ment is entered upon their default — persons not in being, having only contingent
interests, are bound by a judgment recovered against persons legally representing them.*

Upon an appeal from an order denying a motion to compel a purchaser at a sale had
under a judgment of foreclosure to complete his purchase, it appeared that the
mortgage was given by the defendant Sophia Iffla, as trustee under the will of Mar-
tin Ficken, pursuant to an order made by this court upon an application made by
her under the provisions of chapter 26 of 1884, authorizing and empowering her to
raise the sum of $900 for the purpose of preserving and improving the property so
mortgaged which constituted a part of the trust fund, and directing that she should
execute and deliver a mortgage upon the land in that sum, to secure her bond.

The testator devised his real estate to the defendant Sophia Iffla in trust to receive
the rents, income and profits to her own use and support, and the support,
education and maintenance of the children of the testator, and after the death
of his wife he directed his real and personal estate to be divided equally among
his children, but in case they should happen to depart this life without issue,
before the death of his wife, then it was directed that his real and personal
estate, after her decease, should be equally divided among all his brothers and
sisters.    At the time of the decease of the testator he left a son, his only child,
surviving him, who is still living, the infant defendant, Winona Ficken, being
his only child and the grandchild of the testator.    The application for the order
was made upon notice to the son.

*Held*, that this order transcended the power conferred upon the court by the act of
1884, as that act did not confer upon it authority to encumber, by way of mort-
gage, the interest and estate of persons entitled to the land in remainder, after the
execution and termination of the trust, but only authorized and provided for the
encumbering of the trust estate itself, when it should be necessary to raise
money upon it for its improvement and preservation.

That this construction of the act was fortified by the circumstance that notice was
not required to be given to the persons entitled to estates in remainder, but only
to the beneficiary or beneficiaries in the trust.

The surviving son of the testator, as well as his daughter and his brothers and
sisters, with their husbands and wives and descendants, were made parties
to the action of foreclosure, for the avowed object of establishing the mort-
gage as a legal security against all of them, and obtaining a decree under it for

the sale of the estate in remainder as well of the trust estate. A copy of the testator's will accompanied and was made part of the complaint, which stated the facts and the interests and liens which the parties might have, in the event of the death of the son without leaving issue; alleged that each and all of such interests or liens were subsequent and inferior to the plaintiff's mortgage, and prayed that the defendants, and all persons claiming under them, or any or either of them, subsequent to the commencement of the action, might be forever barred and foreclosed of all right, claim, lien and equity of redemption in the said mortgaged premises; none of the defendants appeared in the action, although they were served with the complaint as well as the summons. A judgment was entered decreeing that each and all of the defendants, and all persons claiming under them, or any or either of them, after the filing of the notice of pendency of action, be forever barred and foreclosed of all right, claim, lien, title, interest and equity of redemption in the said mortgaged premises, and every part thereof, and that the surplus, if any, should be paid into court, and upon the happenings, contingency or contingencies, provided in and by said will, should pass to the devisee or devisees, or persons entitled thereto, according and pursuant to the provisions of the said will as to said real property and to the laws of the State of New York:

*Held,* that the judgment was conclusively binding upon the defendants and their interests, either immediate or contingent, and that the purchaser acquired a good and valid title to the property.

That while the general principle is that a prior encumbrancer, or one who claims adversely, is not a proper party in a foreclosure suit, or in actions of a kindred character, involving a question of priority as to liens or a claim to dower adverse to the interest of the plaintiff, none of them hold that where the claim is stated in the complaint, as was the fact in this case, that it may not be the subject of adjudication, and the judgment thereon be conclusive, where no objection is taken, that it is not a proper subject of consideration.

*Jordan* v. *Van Epps* (85 N. Y., 427) followed.

This rule is equally as imperative and applicable, whether the judgment results from an issue framed at the instance of the parties affected, or upon their default and omission to appear in the action.

*Rathbone* v. *Hooney* (58 N. Y., 463); *White* v. *Merritt* (3 Seld., 352); *Emigrant Industrial Savings Bank* v. *Goldman* (75 N. Y., 127) distinguished.

That in no event could any unborn descendants, or children of either of the parties defendant, object or impeach the judgment, as persons not in being and having only remote or contingent interests in the subject of the litigation, are concluded by the recovery of a judgment against those persons legally representing them and made parties to the litigation.

*Mead* v. *Mitchell* (17 N. Y., 210) followed.

APPEAL from an order made at Special Term denying a motion made by the plaintiff to compel the purchaser to complete his purchase, by taking the title tendered to him under a foreclosure sale and paying the balance of the purchase-price.

*John J. Gleason,* for the appellant.

*Ferdinand Kurzman,* for the respondent.

DANIELS, J.:

The mortgage which was foreclosed was executed by Sophia Iffla as trustees under the will of Martin Ficken, her deceased husband. She was appointed the trustee of all his real estate by his will, which was executed on the 22d of October, in the year 1851, and he died in the year 1853. And she was also appointed the executrix of his estate and his real estate was devised to her in trust to receive the rents, income and profits thereof, and apply the net rents, income and profits to her own use and support, and the support, education and maintenance of the children of the testator which he should leave at the time of his decease. After the death of his wife he directed his real and personal estate to be divided equally among his children, but in case they should happen to depart this life without issue before the death of his wife, then it was directed that his real and personal estate, after her decease, should be equally divided among all his brothers and sisters. She was empowered to make all necessary repairs, alterations and improvements in and about the real estate as she might deem best, and the expense of making them was made payable out of the rents of such real estate. At the time of the decease of the testator he left a son, his only child surviving him, who is still living. This surviving son was afterwards married and the infant defendant, Winona Ficken, is the only child of such marriage. She, as well as her father and mother, and the brothers and sisters of the testator, with their respective wives, husbands and children, have been made parties to this action.

In 1885 the estate required improvements and repairs, and she, upon notice to her son, applied to a Special Term of this court for leave to borrow the sum of $900 to make such improvements. And an order was made in October, 1885, pursuant to her application, authorizing and empowering her to raise the sum of $900, for the purpose of preserving and improving this property and directing that she should execute and deliver a mortgage in that sum, to secure her bond, upon the land, containing appropriate reference to the will of the deceased, which it was ordered should be a first lien on such

land and upon all the estate, right, title and interest whatsoever therein, with the same force and effect as if it had been executed by the testator in his lifetime. And in compliance with and under the authority of this order she obtained this money from the plaintiff for the improvement of the real estate mentioned in the will and described in the mortgage.

The authority for the order and the execution of the mortgage was supposed to have been derived under chapter 26 of the Laws of 1884, authorizing the Supreme Court to permit a trustee of an express trust to raise money by mortgage upon the property, for the purpose of preserving or improving the estate. But this order very manifestly transcended the power conferred upon the court by this act. For that was not intended to supply the authority, neither has it done so, to encumber, by way of mortgage, the interest and estate of persons entitled to the land in remainder, after the execution and termination of the trust. But it has authorized and provided for the encumbering of no more than the trust estate itself, where that shall be necessary to raise money upon it for its improvement and preservation. This is the language of the act, and its restriction in this manner is fortified by the circumstance that notice of the application is required only to be given to the beneficiary or beneficiaries in the trust. It is that estate, and no other, which the trustee is in this manner permitted to encumber. If the estate of the persons in remainder had been intended to be included, then notice of the application to them would certainly have been provided for. But no such notice has been required to be given, and without it the legislature would have surely no authority for investing the trustee with power to dispose of or encumber such remainder. And to raise money for this object upon the faith of this trust estate itself, it was not necessary that it should be encumbered at all, for by the will of the testator ample power was given for making all necessary repairs, alterations and improvements, by the appropriation of the rents of the property to that end. And if the case was dependent for its disposition solely upon the effect of these facts and the application of this statute, it would be entirely clear that the purchaser could obtain no such title as the court would require him to accept under his purchase. But it does not, for in the complaint for the foreclosure of the mortgage these facts are set

forth, and it was accompanied with a copy of the testator's will, which has been made a part of it. And the surviving son of the testator, as well as his daughter, and his brothers and sisters, with their husbands and wives and descendants, have been made parties to the action for the avowed object of establishing the mortgage as a legal security against all of them, and obtaining a decree under it for the sale of the estate in remainder as well as of the trust estate. These other persons are stated to be " the brothers and sisters of said Martin Ficken, deceased, and the heirs-at-law of his brothers and sisters who have died." Then it is added, further, that they "have, or claim to have, some interest in or lien upon the said mortgaged premises, or some part thereof, because and by reason of the provisions of said will, in the event of the son of said testator and the said Winona Ficken, and any other children born to said son of testator, dying prior to said Sophia Iffla, the trustee." And it is further added, after referring to a mechanic's lien, that, "each and all, which interests or liens, if any, is subsequent and inferior to the plaintiff's said mortgage, and is subject and subordinate thereto, and the rights and interests of said defendants, and each and all of them in the premises, if the event above named should transpire, would, because and by reason of the facts hereinbefore alleged, be inferior and subsequent to said mortgage."

Neither of the defendants appeared in the action, although they were served with the complaint as well as the summons. And by the complaint judgment was demanded, " that the defendants herein, and all persons claiming under them, or any or either of them, subsequent to the commencement of this action, may be forever barred and foreclosed of all right, claim, lien and equity of redemption in the said mortgaged premises. And a sale is then demanded for the satisfaction of the mortgage debt.

The court upon the application for the confirmation of the referee's report, which was made under an order of reference and for judgment, " decreed that each and all of the defendants in this action, and all persons claiming under them, or any or either of them, after filing of such notice of pendency of this action, be and they are hereby forever barred and foreclosed of all right, claim, lien, title, interest and equity of redemption in the said mortgaged

premises and each and every part thereof." The surplus which might arise from the sale was also directed to be paid into court, and this direction was followed by the further adjudication, that "upon the happenings, contingency or contingencies provided in and by said will, the same shall pass to the devisee or devisees, or persons entitled thereto, according and pursuant to the provisions of said will as to said real property and to the laws of the State of New York.

These allegations in the complaint and the adjudications made upon and in view of them, evince the purpose of the action in part to have been to conclude the persons interested in this estate, subject to the trust, and not only to bind the estate in remainder by adjudging it to be subject to the encumbrance, but to dispose of all by a sale to the purchaser under the judgment. And the adjudications of the court were adapted and designed to carry this purpose into effect. It has, in brief, been alleged that the estate in remainder was legally subjected to the mortgage and the court, with the provisions of the will before it, has adjudicated the facts and the law applicable to the action to that effect, and that it has done with the apparent consent and acquiescence of all the parties entitled in any event to participate in the remainder after the trust by their default in the action. And the case having been disposed of in this manner, although upon an erroneous theory, the judgment is conclusively binding on these persons and their interests, either immediate or contingent in this estate.

The law upon this subject was considered in *Jordan* v. *Van Epps* (85 N. Y., 427), where it was stated to be, that while the cases then referred to "sustain the general principle that a prior encumbrancer or one who claims adversely, is not a proper party in a foreclosure suit or in actions of a kindred character involving a question of priority as to liens or a claim to dower adverse to the interest of the plaintiff, none of them hold that where the claim is stated in the complaint, as was the fact in the partition case, that it may not be the subject of adjudication, and the judgment thereon conclusive where no objection is taken, that it is not a proper subject of consideration." And "the rule is well settled that a judgment rendered by a court having competent authority to deal with the subject-matter involved in the action, and jurisdiction of the par-

ties, although against the facts, or without facts to sustain it, is not void as rendered without jurisdiction and cannot be questioned collaterally." (Id., 435, 436.)

In *Lewis* v. *Smith* (5 Seld., 502), it was held that an estate by way of dower would not be barred by an ordinary judgment in a foreclosure suit on a subordinate mortgage to which the widow was made a party. But this conclusion was guarded by the qualification that " it is not intended to decide that if a party claiming a title prior to the mortgage should be made a defendant, and should answer and litigate the question and should have a decree against him, it would not conclude him in a collateral action." (Id., 516.) Indeed, the general rule of the law is, that all persons who are made parties to an action in court shall be so far concluded by the judgment upon the case presented, as to render it binding upon them and their interests affected by the judgment, and to prevent them or either of them, while the judgment stands, from afterwards questioning its correctness or legality in a collateral proceeding. And the rule is equally as imperative and applicable whether the judgment results from an issue framed at the instance of the parties affected, or upon their default and omission to appear in the action. (*Baron* v. *Abeel*, 3 Johns., 481; *White* v. *Merritt*, 3 Seld., 352; *Gates* v. *Preston*, 41 N. Y., 113; *Brown* v. *Mayor*, 66 N. Y., 385.)

This action is entirely distinguishable from those in which a superior right or title has been held not to be affected by the usual judgment of foreclosure upon a subsequent mortgage. *Rathbone* v. *Hooney* (58 N. Y., 463), was such an action. And so was the case of *White* v. *Merritt* (*supra*), in neither of which were any allegations of fact made, designed to subordinate the superior or preceding rights to the judgment sought to be obtained in the foreclosure suit. And *Emigrant Industrial Savings Bank* v. *Goldman* (75 N. Y., 127), also proceeded upon this distinction, with the qualification added by the chief judge, that he should be disposed to adopt the view that the party entitled to the superior rights consented to come in subsequently to the plaintiff's mortgage, " if it appeared that in fact the premises were sold clear of Goldman's lien, and especially with his knowledge and acquiescence." (Id., 133.) It did so appear in this case, for not only was the complaint

framed in such a manner as to obtain the judgment which was pronounced, but it proceeded upon the default and presumed acquiescence of all the parties to the action in the propriety of the relief which was demanded in the complaint, and to support which its averments of fact were expressly directed. This subject has been further considered in the recently reported case of *Hefner* v. *North Western Insurance Company,* decided by the Supreme Court of the United States which, upon a full consideration of the authorities in this as well as other States, and in the court pronouncing the judgment, has reached the conclusion that such a judgment cannot be attacked or assailed collaterally, but that the title and interests of the parties adjudicated upon, erroneously it may be and in the absence of legal authority, are conclusively controlled by the judgment and the only remedy for their relief would be by way of an application to set aside, or an appeal from the determination which has been made. No such application has been made by either of these parties; neither has any appeal been taken, or could be taken, as these persons are all in default, from the judgment which has been pronounced.

There were no other persons or person to be made parties to the action, for by the will no person was given either a vested or contingent interest in the property after the brothers and sisters of the testator. If these persons, together with the testator's son and his daughter, should die before the widow, then the property would descend to the testator's heirs-at-law, who would be concluded, deriving title from him by this judgment.

But in no event could any unborn descendants or children of either of these parties object to or impeach the judgment, for persons not in being, and having only remote or contingent interests in the subject of the litigation, are concluded by the recovery of a judgment against those persons legally representing them and made parties to the litigation. This was considered in *Mead* v. *Mitchell* (17 N. Y., 210), where the law was stated to be, "that contingent limitations, and executory devises to persons not in being, would, in like manner, be bound by a decree against the virtual representative of these remote and contingent interests, the person having the first vested estate of inheritance." (Id., 214.) And this principle was stated and acted upon in *Williamson* v. *Field* (2 Sandf. Ch., 533,

563); *Eagle Fire Insurance Company* v. *Cammet* (2 Edw. Ch., 127); *Nodine* v. *Greenfield* (7 Paige, 544, 548); *Brevoort* v. *Brevoort* (70 N. Y., 136, 139, 140).

There appears in no view, therefore, to be any infirmity, either direct or contingent, in the title tendered to the purchaser. The result, consequently, is that the title and interest has been conclusively subordinated to this judgment. And such interests were legally sold under its authority; and the purchaser will obtain a valid title to the property by taking the deed proposed to be given to him by the referee.

The order should be reversed, but, as the question has for the first time been presented in this manner to the court, it should be without costs.

VAN BRUNT, P. J., and BRADY, J., concurred.

Order reversed, without costs.